IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** * | |
| v. * | **Criminal No. PX-20-44** |
| **ALLEN LAMIN,** * | |
| Defendant. * | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the defendant Allen Lamin's Motion to Reopen Detention Hearing, or in the Alternative for Temporary Release from Custody, ECF 21. The government filed an opposition, ECF 27. No hearing is necessary. For the reasons stated below, the motion is denied.

## Background

Mr. Lamin has been charged by indictment with five counts of bank fraud in violation of 18 U.S.C. § 1344. The maximum possible sentence he faces is 30 years' incarceration. On June 17, 2020, Mr. Lamin appeared for his initial appearance on the indictment. Judge DiGirolamo entered an order of temporary detention pending a hearing. ECF 10.

On June 17, 2020, Mr. Lamin appeared before me for a detention hearing. ECF 11. I found by a preponderance of the evidence that there was a serious risk that Mr. Lamin would not appear and by clear and convincing evidence that there was no condition or combination of conditions that would reasonably assure Mr. Lamin's presence at trial or as otherwise required. I entered an Order of Detention. ECF 13. I provided the following reasons for detention:

> According to the government's evidentiary proffer, affidavit in support of search warrant for a telephone, and the indictment, from February 2019 until January 2020, Mr. Lamin engaged in a scheme to defraud several banks in Maryland. He

> allegedly deposited stolen and altered postal money orders into accounts held in the names of individuals whose identity Lamin had stolen, and he withdrew money from the fraudulent accounts for his personal use. The weight of the evidence includes video surveillance of Mr. Lamin at post offices stealing postal money orders and banks negotiating stolen postal money orders. On January 22, 2020, when the government executed search warrants on Lamin's residences in Baltimore, Lamin fled the area. He sent a text message on the day of the execution of the search warrant stating, "I'm running from the law." On May 21, 2020, the United States Marshal's Fugitive Task Force located Lamin at a residence in Dallas. Once Lamin was in custody, the government executed a third residential search warrant and found more evidence that Lamin was committing fraud, including several fake driver's license displaying Lamin's photograph and the names of victims, stolen postal money orders, and debit cards in the names of alleged victims in this case. Lamin allegedly negotiated a stolen postal money order in Dallas after the search warrant was executed. Lamin has several prior convictions for fraud, giving false names to police officers, and other crimes involving deceit, including most recently a 2015 conviction in the EDVA for bank fraud and aggravated identity theft for which he received a 54-month combined sentence and for which he's on supervised release. Lamin does not appear to have lawful status in the United States. ICE records revealed the defendant is under order of supervision and stopped reporting in January 2018.

*Id.*

On March 15, 2021, Mr. Lamin filed the pending motion to reopen his detention hearing. He argues that "newly-available evidence undercuts the inference that Mr. Lamin poses a risk of flight." Def.'s Mot. 1. He contends:

> Newly-available records show that Mr. Lamin was granted withholding of removal under Section 241(b)(3) of the Immigration and Naturalization Act. He will not be removed from the United States prior to resolution of this case, and, for the reasons set forth in the decision of the Immigration Judge, he has an extraordinary disincentive to return to Sierre Leone, a country he fled as an adolescent with the surviving members of his family.
>
> Additional records now show that Mr. Lamin had reservations for round-trip travel from Dallas to Baltimore on the day of his arrest, undercutting the inference that he was fearful of being present in Maryland, and therefore the inference that his presence in Texas was for the purpose of evading law enforcement.

*Id.* In addition, he claims there is "a widespread and uncontrolled outbreak of COVID-19" at the Chesapeake Detention Center (CDF), where he is detained. *Id.* at 1–2.

**Discussion**

Mr. Lamin filed his motion under 18 U.S.C. § 3142(f) and (i). Subsection (f) allows the Court to reopen a detention hearing if "information exists that was not known to the [defendant] at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the [defendant's] appearance . . . as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).

In the alternative, Mr. Lamin seeks temporary release for a "compelling reason" under § 3142(i), which provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i). To determine whether temporary release under § 3142(i) is appropriate due to COVID-19, the Court considers

> the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020), ECF 402 in *United States v. Creek*, No. CCB-19-36 (D. Md.). "The defendant bears the burden of demonstrating a compelling reason." *United States v. Creek*, No. CCB-19-36, 2020 WL 2097692, at *3 (D. Md. May 1, 2020). Courts that have considered temporary release under § 3142(i) during the pandemic have "recognized that, in deciding whether temporary release is warranted, the court must still consider the danger to the community or risk of flight that would be posed by the defendant's release as analyzed under the factors set forth in 18 U.S.C. § 3142(g)." *Id.*

3

In determining whether a defendant should be released or detained pending trial, the Bail Reform Act requires that the Court consider the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of the person, including criminal history; whether, at the time of the current offense, the person was on probation or parole; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

Mr. Lamin, 33, emigrated from Sierra Leone to the United States in 2003 and has lived in the Washington, D.C. metropolitan area since 2012. Mr. Lamin's girlfriend reported that he has not traveled outside the United States since 2011. His mother and nine siblings live in Minnesota. He is in contact with three of his siblings weekly. One of his brothers lives in Africa. Mr. Lamin reported that he was addicted to alcohol and using marijuana weekly before he was arrested.

Mr. Lamin's recent employment history is limited. He reported that he has been paid "under the table" for security work at a bar in Annapolis, Maryland and work for a moving company. He also reported that he has worked as a music producer and promoter and in automobile repair. He stated that he earned $100 per day when he worked, but that he did not work consistently. His girlfriend stated that he has monthly expenses of $300 for his daughter's dance classes and a cellphone bill.

At the time of the detention hearing, Mr. Lamin did not appear to have lawful status in the United States. According to ICE records, he was under ICE supervision but had not reported since January 2018.

Mr. Lamin's criminal history includes numerous prior convictions for fraud, theft, writing bad checks, giving false names to police officers, and other crimes involving deceit. He has failed to appear for court on several occasions. At the time of this alleged offense, he was on supervised

release for a 2015 conviction in the United States District Court for the Eastern District of Virginia for bank fraud and aggravated identity theft.  There is a pending petition on supervised release in the Eastern District of Virginia, and a detainer out of that district has been lodged against him.

Mr. Lamin is charged with five counts of bank fraud.  The government proffered that Mr. Lamin engaged in a scheme to defraud several banks in Maryland.  He allegedly deposited stolen or altered postal money orders into accounts held in the names of individuals whose identity he had stolen.  He then withdrew money from those accounts for his personal use.

> For example, on February 7, 2019, 98 blank postal money orders were stolen from the Prince George's Plaza Post Office in Hyattsville.  Between February 11 and August 12, 2019, 80 of those money orders were cashed, and all were altered to amounts between $400 and $1,000. Four of the altered money orders were made payable to Allen Lamin. On September 27, 2019, 67 money orders were stolen from the Prince George's Plaza Post Office. Between October 1 and October 17, 2019, 32 of those money orders were altered to $1,000 and negotiated.

Gov't Opp'n 6. The proffered evidence includes video surveillance of Mr. Lamin stealing postal money orders at post offices and negotiating them at banks. *Id*. at 6–7.

On January 22, 2020, the government executed search warrants on Mr. Lamin's residences in Baltimore.  Mr. Lamin sent a text message that day stating, "I'm running from the law," and he fled the area.  Mr. Lamin never informed his probation officer that he went to Texas, as he was required to do.  Five months later, he was apprehended by law enforcement in Dallas, Texas.  At Mr. Lamin's Dallas home, officers seized additional evidence of fraud, including debit cards in others' names, fake identifications, and stolen postal money orders.  From Mr. Lamin's cell phone, officers recovered "photographs of firearms (including an assault rifle), a photograph of a driver's license that displays Lamin's photograph and the name of his identity theft victim, and conversations in which Lamin asked to purchase a fraudulent driver's license." *Id.* at 8.

The danger to the community posed by Mr. Lamin's release is continued bank fraud.

Having previously analyzed these Bail Reform Act factors and found that Mr. Lamin should be detained pending trial because there was no combination of conditions that would reasonably assure his presence at trial or as otherwise required, I now consider whether the newly presented information regarding Mr. Lamin's immigration status, the evidence of a roundtrip airline ticket from Dallas to Baltimore, or the COVID-19 outbreak at CDF is a material change in circumstances such that there are now conditions of release that will reasonably assure his appearance as required. Mr. Lamin does not argue that any other factor under the Bail Reform Act has changed.

Mr. Lamin states that, in 2017, he "was granted withholding of removal under Section 241(b)(3) of the Immigration and Naturalization Act" and "will not be removed from the United States prior to resolution of this case," facts that were unknown to his counsel and unreported at the detention hearing. Def.'s Mot. 1. This information, he argues, calls into question my finding that he does not have lawful status in the United States and bolsters his claim that he has a disincentive to flee to Sierra Leone. These arguments are unpersuasive. Although the information may be new to defense counsel, Mr. Lamin should have known about the withholding of removal order in 2017, when it issued. Even if Mr. Lamin has lawful status in the country, it is undisputed that he did not report to ICE as required since January 2018. Moreover, his disincentive to return to a country he fled as a child does not ensure that he will not flee to another country or another state. Therefore, this information about his immigration status does not amount to a material change in circumstances such that there are now conditions of release that will reasonably assure Mr. Lamin's presence at trial or as otherwise required.

Mr. Lamin also claims that since the detention hearing, he, through counsel, has uncovered evidence that, on May 17, 2020, he booked a roundtrip airline ticket from Dallas to Baltimore for

travel to Baltimore on May 20, 2020, five months after he fled to Dallas while police searched his Baltimore home.  Mr. Lamin argues the purchase of this airline ticket "indicates that he was not fearful of traveling to the District of Maryland and therefore undercuts the inference that his presence in Dallas was for the purpose of evading law enforcement."  Def.'s Mot. 1.  I am not convinced.  As an initial matter, whether this information, which Mr. Lamin clearly knew at the detention hearing even if his counsel did not, constitutes "information . . . that was not known to the [defendant] at the time of the hearing" is unclear.  Even if it is information not known at the time of the hearing, it does not change the calculus.  Mr. Lamin left Maryland when he knew officers were executing a search and seizure warrant at his home, and he sent a text message that day that he was "running from the law."  The purchase of a roundtrip airline ticket on May 17, 2020, five months after he fled to Dallas, for a four-day visit to Baltimore (after which he planned to return to Dallas) does not undercut the inference that his presence in Dallas was for the purpose of evading law enforcement.

       Finally, Mr. Lamin cites as new information the recent COVID-19 outbreak at CDF, where he is detained.  In early January 2021, an outbreak of COVID-19 began at CDF.  As of April 2, 2021, there have been 185 COVID-19 positive inmates and 85 COVID-19 positive staff members. *COVID-19 Dashboard*, Md. Dept. Pub. Safety & Correctional Servs. (Apr. 2, 2020), *available at* https://dpscs.maryland.gov/covid-19/.  However, the number of active cases has dropped drastically.  As of April 2, 2021, there were no COVID-19 positive inmates and 6 COVID-19 positive staff members.  *Id.*

       As I understand the situation, there is not currently a COVID-19 outbreak at CDF.  That there was a recent COVID-19 outbreak at the facility does not, in this particular case, constitute a material change in circumstances that warrants reopening the detention hearing.  Even considering

the prior COVID-19 outbreak at the jail, I do not believe there are conditions of release that would reasonably assure me that Mr. Lamin will appear in court or surrender to serve any sentence as required.

Moreover, under these circumstances, Mr. Lamin has not shown a compelling reason for his temporary release under 18 U.S.C. § 3142(i) as analyzed through the *Creek* factors. Mr. Lamin reports he had COVID-19 during the recent outbreak at the jail and that he has underlying health conditions that make him more susceptible to serious illness from COVID-19, although he does not specify them. As I understand it, Mr. Lamin has recovered from COVID-19, and the number of COVID-19 positives has declined significantly in the past few weeks, with no detainees and only 6 staff members positive as of April 2. The current COVID-19 situation at CDF appears stable for now. Upon consideration of the *Creek* factors, I find that Mr. Lamin has not established a compelling reason for temporary release.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is, this 6th day of April, 2021, hereby ORDERED that Allen Lamin's Motion to Reopen Detention Hearing, or in the Alternative for Temporary Release from Custody, ECF 21, IS DENIED.

/S/
Deborah L. Boardman
United States Magistrate Judge